UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CASEY BENNETT<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ALPHARETTA, GEORGIA;<br>BRIAN IADZE;<br>MONIQUE CLARK; AND<br>ANGELA BENTON;<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Casey Bennett brings this complaint under 42 U.S.C. § 1983 and Georgia law against Defendant City of Alpharetta, Defendant Officer Brian Iadze, Defendant Fulton County Detention Officer Monique Clark, and Defendant Fulton County Sergeant Angela Benton in their individual capacities.

## PARTIES

1. Plaintiff Casey Bennett is an adult resident of the State of Georgia.

2. The City of Alpharetta, Georgia, is a municipal corporation located in Fulton County, Georgia.

3. Officer Brian Iadze was employed by the city of Alpharetta's Office of Public Safety as a law enforcement officer at all times relevant to this complaint.

4. Detention Officer Monique Clark was employed by the Fulton County Sheriff's Officer at all times relevant to this complaint.

5. Sergeant Angela Benton was employed by the Fulton County Sheriff's Office at all times relevant to this complaint.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8. Upon service of process, this Court acquires personal jurisdiction over Defendants under Fed. R. Civ. P. 4(k).

9. Venue is proper in the Atlanta Division of the Northern District of Georgia under 28 U.S.C. § 1391(b).a

## FACTUAL ALLEGATIONS

10.     Alpharetta Officers Iadze and Hamm arrested Casey Bennett on June 5, 2023 in the City of Alpharetta on charges of criminal trespass and public intoxication.

11.     Following Bennett's arrest, the officers transported her to the North Fulton County Jail Annex (the "jail") in Alpharetta, Georgia.

12.     The Fulton County Sheriff operates the North Fulton County Jail Annex.

13.     The Alpharetta Officers handcuffed Plaintiff behind her back when they removed her from the patrol car.

14.     Plaintiff was obviously highly intoxicated and in need of a medical evaluation prior to being booked into the jail.

15.     Defendant Iadze escorted Plaintiff into the jail by holding her by both arms.

16.     As part of the booking process, Iadze moved Plaintiff in front of body scanner used by the jail to search arrestees for contraband.

17.     During this time, Plaintiff was passively uncooperative, weaving on her feet as she stood. Plaintiff's language was largely incoherent and she spoke about "pressing charges" agains the officers and ultimately threatened to sit down if Defendant Iadze did not release her from his grip.

18. Officer Hamm realized that Plaintiff was not able to cooperate with the booking process and asked Defendants Clark and Benton if they would place Plaintiff into a cell until she was able to be cooperative and stand on her own.

19. Plaintiff then moved toward a chair and sat down. Plaintiff continued to use abusive language which each of the officers in the room understood was a result of Plaintiff's intoxication. None of the officers believed that Plaintiff posed any threat to them.

20. Defendant Benton then approached Plaintiff and told her to stand in front of the body scanner. Plaintiff again refused and insisted that officers call her mother.

21. After Plaintiff refused to stand and approach the scanner, Defendant Benton and Defendant Clark each stated that they could do things "the easy way or the hard way."

22. After conferring with each other, Defendant Clark and Defendant Benton approached Plaintiff and began to escort her to the body scanner.

23. As they stood in front of the scanner, Defendant Iadze was holding onto Plaintiff's arms. Before Plaintiff had an opportunity to cooperate, Defendant Clark placed his hands around Plaintiff's neck and began to strangle her.

24. As he did so, Defendant Clark told Plaintiff, "I choke folk; I advise you to cooperate. Hold your face before you lose your breath. The choice is yours."

25. Defendant Clark did not actually give Plaintiff a choice. Defendant Clark began strangling Plaintiff as he made that statement and did not give Plaintiff an opportunity to respond.

26. As Defendant Clark strangled Plaintiff, Defendant Iadze reinforced his grip on Plaintiff by grabbing her on the shoulder.

27. Defendant Benton was one or two steps from Officer Clark and had a clear view of Plaintiff and Defendant Clark.

28. The following image shows Defendant Clark's wrapped around Plaintiff's neck while Defendant Iadze restrained Plaintiff and Defendant Benton looked on.



29. Officer Clark continued strangling Plaintiff for over 10 seconds until she lost consciousness and collapsed.

30. Plaintiff was handcuffed and fully restrained the entire time she was being strangled.

31. Defendant Iadze watched Officer Clark choke Plaintiff and heard Clark say he was choking her.

32. Defendant Benton watched Defendant Clark choke Plaintiff and heard Clark say he was choking her.

33. Defendant Benton is Defendant Clark's direct supervisor.

34. Defendant Benton had the authority to order Defendant Clark to cease choking Plaintiff.

35. Defendant Benton knew that Defendant Clark was strangling Plaintiff and intended for Plaintiff to lose consciousness.

36. Defendant Benton knows that cutting off the blood supply to the brain for 10 seconds creates a substantial risk of serious harm.

37. Defendant Benton had ample opportunity to intervene and stop Defendant Clark from strangling Plaintiff.

38. Defendant Iadze held Plaintiff while Officer Clark strangled her, but let go right before she passed out, allowing her to fall to the floor.

39. The North Fulton County Jail Annex has on-site medical staff.

40. There was a nurse on duty at the time that Plaintiff lost consciousness from Officer Clark's chokehold and the nurse's station was about twenty feet from where Officer Clark strangled Plaintiff.

41. After Plaintiff lost consciousness and collapsed, Defendant Clark walked away from her.

42. Defendant Iadze did not immediately render aid to Plaintiff or take her to the nurse.

43. Defendant Iadze told Plaintiff to stand up multiple times and again asked whether she was going to cooperate.

44. With Sergeant Benton's help, Defendant Iadze pulled Plaintiff back up to place her into the body scanner.

45. Plaintiff complained that she was hurt and couldn't breathe.

46. After they finished scanning Plaintiff, Sergeant Benton and Defendant Iadze moved Plaintiff to the nurse's station.

47. Before allowing the nurse to examine Plaintiff, Sergeant Benton and Defendant Iadze placed Plaintiff on a scale to measure her weight.

48. Three minutes after Plaintiff collapsed, and as Plaintiff was finally seen by the nurse, FTO Hamm notified Defendant Iadze that he had called an ambulance.

49. Shortly thereafter, Defendant Iadze and Sergeant Benton spoke to one another about what just took place.

50. As the two of them began to speak, Defendant Iadze disabled the voice recording function on his body cam, depriving Plaintiff of directly material information regarding the events surrounding Plaintiff's collapse and the conduct and intentions of Defendants Iadze, Clark, and Benton.

51. After spending about twenty minutes with the nurse, EMS transported Plaintiff to North Fulton Hospital for treatment due to the strangulation she received from Officer Clark.

52. At all times pertinent hereto, the City of Alpharetta and its law enforcement employees were the insureds on a policy of insurance issued by U.S. Specialty Insurance Company which provides for indemnification of the insureds for claims arising from injuries resulting from law enforcement "wrongful acts," including but not limited to the violation of civil rights committed while conducting law enforcement activities.

53. The actions described within this Complaint to have been committed by Defendants Iadze are actions that are encompassed within the coverages of the above-mentioned policy of insurance.

54. Because Defendant City of Alpharetta purchased liability insurance covering Defendant Iadze's conduct, it has waived its sovereign immunity as to Plaintiff's claim.

55. Defendant Iadze was on duty and acting within the scope of his employment when he failed to intervene and allowing Officer Clark to use excessive force and assault Plaintiff.

56. Defendant City of Alpharetta is therefore liable for Defendant Iadze's tortious conduct based on Georgia's law of respondeat superior.

57. Prior to the filing of this Complaint, the Plaintiff presented her claim for damages to the City of Alpharetta.

58. Plaintiff served her ante litem notice to the City of Alpharetta on September 28, 2023.

59. That notice complied with the requirements of O.C.G.A. § 36-33-5.

## COUNT I

60. Defendant Clark is liable under 42 U.S.C. § 1983 and the Fourteenth Amendment for the unconstitutional use of force against Plaintiff.

## COUNT II

61. Defendant Benton is liable under 42 U.S.C. § 1983 and the Fourteenth Amendment for the failure to intervene in the unconstitutional use of force by Defendant Clark.

## COUNT III

62. Defendant Iadze is liable under 42 U.S.C. § 1983 and the Fourteenth Amendment for the failure to intervene in the unconstitutional use of force by Defendant Clark.

## COUNT IV

63. Defendant Clark is liable for assault and battery under O.C.G.A. §§ 51-1-13 and 51-1-14.

## COUNT V

64. The City of Alpharetta is liable for the tortious actions of Defendant Clark under O.C.G.A. § 51-2-2.

## COUNT VI

65. All Defendants are liable for attorney's fees under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court to:

a. Assume jurisdiction over this matter;

b. Provide for a jury trial upon all claims and issues so triable;

c. Award Plaintiff nominal, compensatory, and special damages against all Defendants in an amount ot be proven at trial;

d. Award punitive damages against Defendants Iadze, Benton, and Clark in an amount to be proven at trial;

e. Award Plaintiff reasonable attorney's fees and costs of litigation under 42 U.S.C. § 1988;

f. Order such other, and further, relief as the Court deems equitable and just.

This 15th day of November, 2023.

**G. Brian Spears**
G. Brian Spears
Georgia Bar No.

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
404-905-2225
bspears@civil-rights.law
jeff@civil-rights.law
wingo@civil-rights.law

**Jeff Filipovits**
Jeff Filipovits
Georgia Bar No. 825553

**Wingo F. Smith**
Wingo F. Smith
Georgia Bar No. 147896

**Surinder K. Chadha Jimenez**
Surinder K. Chadha Jimenez
Georgia Bar No. 450033

THE CHADHA JIMENEZ LAW FIRM
4480 South Cobb Drive
Suite H #181
Smyrna, GA 30080
404-941-4039
suri@thechadhajimenezlawfirm.com